IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Mark Jefferis, | |
| *On behalf of himself and those similarly situated*, | Case No. 1:18-cv-687 |
| Plaintiff, | Judge |
| v. | Magistrate Judge |
| Hallrich Incorporated, and A.E. Szambecki, | Jury Demand Endorsed Hereon |
| Defendants. | |

CLASS AND COLLECTIVE ACTION COMPLAINT

1.     Mark Jefferis, on behalf of himself and all similarly-situated individuals, brings this action against Defendants Hallrich Incorporated and A.E. Szambecki ("Defendants"). Plaintiff seeks appropriate monetary, declaratory, and equitable relief based on Defendants' willful failure to compensate Plaintiff and similarly-situated individuals with minimum wages as required by the Fair Labor Standards Act ("FLSA"), the Ohio Constitution, Article II, Section 34a ("Section 34a"), O.R.C. § 4113.15 (Ohio's "Prompt Pay Act"), and O.R.C. § 2307.60.

2.     Defendants operate approximately 132 Pizza Hut Pizza franchises in Ohio, Pennsylvania, West Virginia, and Indiana (the "Hallrich" stores or restaurants).

3.     Defendants repeatedly and willfully violated the Fair Labor Standards Act the Ohio Constitution, and the Ohio Prompt Pay Act by failing to adequately reimburse delivery drivers for

their delivery-related expenses, thereby failing to pay delivery drivers the legally mandated minimum wage wages for all hours worked.

4.     Defendants maintain a policy and practice of underpaying their delivery drivers in violation of the FLSA, Section 34a, and the Prompt Pay Act.

5.     All delivery drivers at the Hallrich stores, including Plaintiff, have been subject to the same employment policies and practices, including policies and practices with respect to wages and reimbursement for out-of-pocket expenses.

6.     Plaintiff brings this action on behalf of himself and similarly situated current and former delivery drivers who elect to opt in pursuant to FLSA, 29 U.S.C. § 216(b) to remedy violations of the FLSA wage and hour provisions by Defendants.

7.     Plaintiff also brings this action on behalf of himself and similarly situated current and former delivery drivers in Ohio, pursuant to Federal Rule of Civil Procedure 23, to remedy violations of Section 34a, the Prompt Pay Act, and O.R.C. § 2307.60.

## JURISDICTION AND VENUE

8.     Under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has jurisdiction over Plaintiff's FLSA claims.

9.     Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's Ohio law claims.

10.     Venue in this Court is proper under 28 U.S.C. § 1391(b) because the parties reside in this district, and a substantial part of the events giving rise to the claim herein occurred in this district.

## PARTIES

**Plaintiff**

**Mark Jefferis**

11.     Plaintiff Mark Jefferis is a resident of Ohio and, at all times material herein, Plaintiff worked within the boundaries of Southern District of Ohio.

12.     Plaintiff is an "employee" of all of the Defendant as defined in the FLSA and Section 34a.

13.     Plaintiff has given written consent to join this action.

**Defendants**

14.     Defendants' Hallrich stores are part of a single integrated enterprise.

15.     Each of the Defendants had substantial control over Plaintiff and similarly situated delivery drivers' working conditions, and over the unlawful policies and practices alleged herein.

16.     At all relevant times, the Hallrich restaurants shared common management and were centrally controlled and/or owned by Defendants.

17.     At all relevant times, all Defendants maintained control over labor relations at the Hallrich restaurants.

18.     During all relevant times, Defendants permitted employees to transfer or be shared by and between the Hallrich restaurants without retraining.

19.     Defendants share or co-determine those matters governing the essential terms and conditions of employment for Plaintiff and similarly situated delivery drivers at the Hallrich restaurants.

20.     Defendants suffer or permit Plaintiff and other delivery drivers to work.

3

21.     Defendants have direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated delivery drivers, and also exercise that authority.

22.     During all relevant times, Defendants also exercised operational control over the delivery drivers at the Hallrich restaurants, including, but not limited to, control over recruiting and training of delivery drivers, compensation of delivery drivers, job duties of delivery drivers, reimbursements to delivery drivers, recruiting and training managers, design and layout of the restaurants, sales and marketing programs, public relations programs, promotional services, appearance and conduct standards, inventory, and inventory controls.

23.     Together, the Defendant entities have earned more than $500,000 in gross sales throughout the relevant time period as defined by the Fair Labor Standards Act.

**Hallrich Incorporated**

24.     Defendant Hallrich Incorporated is a foreign corporation authorized to do business under the laws of Ohio.

25.     Hallrich Incorporated is the corporate entity that appears on Plaintiff's paystubs for the work he completes for Defendants.

26.     Hallrich Incorporated began operations in 1968, and was owned and operated by William G. Halls, A. Scott Ritchie, and A.E. Szambecki.

27.     Hallrich Incorporated now operates 133 Pizza Hut restaurants in 4 states.

28.     The Hallrich website, innercrust.com, lists all Hallrich Pizza Hut locations.

29.     Hallrich Incorporated has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

4

30. Hallrich Incorporated has direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

31. At all relevant times, Hallrich Incorporated maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

32. Hallrich Incorporated is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA and Section 34a.

33. At all relevant times, Hallrich Incorporated has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

34. Hallrich Incorporated's gross revenue exceeds $500,000 per year.

**A.E. Szambecki**

35. Defendant A.E. Szambecki is an owner and operator of the Hallrich restaurants and Hallrich Incorporated.

36. A.E. Szambecki is the Chief Executive Officer of Hallrich Incorporated.

37. A.E. Szambecki is individually liable to Hallrich's delivery drivers under the definitions of "employer" set forth in the FLSA and Section 34a because he owns and operates the Hallrich stores, serves as a manager and/or member of Hallrich Incorporated, ultimately controls significant aspects of Hallrich's day-to-day functions, and ultimately controls compensation and reimbursement of employees. 29 U.S.C. § 203(d).

38.    At all relevant times, by virtue of his role as owner and CEO of Hallrich, A.E. Szambecki has had financial control over the operations at each of the Hallrich stores.

39.    At all relevant times, by virtue of his role as owner and CEO of Hallrich, A.E. Szambecki has a role in significant aspects of the Hallrich stores' day to day operations.

40.    At all relevant times, by virtue of his role as owner and CEO of Hallrich, A.E. Szambecki has had control over the Hallrich stores' pay policies.

41.    At all relevant times, by virtue of his role as owner and CEO of Hallrich, A.E. Szambecki has had power over personnel and payroll decisions at the Hallrich stores, including but not limited to influence of delivery driver pay.

42.    At all relevant times, by virtue of his role as owner and CEO of Hallrich, A.E. Szambecki has had the power to hire, fire and discipline employees, including delivery drivers at the Hallrich stores.

43.    At all relevant times, by virtue of his role as owner and CEO of Hallrich, A.E. Szambecki has had the power to stop any illegal pay practices that harmed delivery drivers at the Hallrich stores.

44.    At all relevant times, by virtue of his role as owner and CEO of Hallrich, A.E. Szambecki has had the power to transfer the assets and liabilities of Hallrich Incorporated.

45.    At all relevant times, by virtue of his role as owner and CEO of Hallrich, A.E. Szambecki has had the power to declare bankruptcy on behalf of Hallrich Incorporated.

46.    At all relevant times, by virtue of his role as owner and CEO of Hallrich, A.E. Szambecki has had the power to enter into contracts on behalf of each of the Hallrich stores.

47.     At all relevant times, by virtue of his role as owner and CEO of Hallrich, A.E. Szambecki has had the power to close, shut down, and/or sell each of the Hallrich stores.

48.     At all relevant times, by virtue of his role as owner and CEO of Hallrich, A.E. Szambecki had authority over the overall direction of each of Hallrich stores and was ultimately responsible for their operations.

49.     The Hallrich stores function for A.E. Szambecki's profit.

50.     A.E. Szambecki has influence over how the Hallrich stores can run more profitably and efficiently.

FACTS

**Class-wide Factual Allegations**

51.     During all relevant times, Defendants have operated the Hallrich stores.

52.     The primary function of the Hallrich stores is to sell pizza and other food items to customers, whether they dine in, carry out, or have their food delivered.

53.     Some or all of the Hallrich stores employs delivery drivers.

54.     Plaintiff and the similarly situated persons Plaintiff seeks to represent are current and former delivery drivers employed by Defendants at the Hallrich stores.

55.     All delivery drivers employed at the Hallrich stores over the last three years have had essentially the same job duties—deliver pizza and other food items to customers.

56.     When there are no deliveries to make, Defendants' delivery drivers are required to work inside the Hallrich stores building pizza boxes, cleaning, preparing pizza and other food items, and completing other duties inside the restaurant as necessary.

7

57. Plaintiff and similarly situated delivery drivers are required to complete non-tipped tasks such as taking orders, preparing vegetables, grating cheese, sweeping, mopping, and/or doing other tasks necessary for the operation of the restaurant when they were not completing deliveries.

58. At all relevant times, Plaintiff and similarly situated delivery drivers have been paid minimum wage minus a tip credit for the hours they worked while completing deliveries.

59. At all relevant times, Plaintiff and similarly situated delivery drivers have been paid minimum wage or slightly above minimum wage for the hours they worked inside the restaurant.

60. Defendants require delivery drivers to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

61. Defendants require delivery drivers to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, financing charges, cell phone costs, GPS charges, and other equipment necessary for delivery drivers to complete their job duties.

62. Defendants require delivery drivers to place a Pizza Hut logo "topper" magnet on top of their car when they deliver pizzas.

63. Defendants require delivery drivers to incur damage to their vehicle in the form of dents or scratches left by the Pizza Hut "topper."

64. Pursuant to such requirements, Plaintiff and other similarly situated employees purchase gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, financing charges, and incur cell phone and data charges all for the primary benefit of Defendants.

8

65. Some of the Hallrich stores do not track or record their delivery drivers' actual expenses.

66. None of the Hallrich stores track or record their delivery drivers' actual expenses.

67. Some of the Hallrich stores do not reimburse delivery drivers for their actual expenses.

68. None of the Hallrich stores reimburse delivery drivers for their actual expenses.

69. Some of the Hallrich stores do not reimburse delivery drivers at the IRS standard business mileage rate.

70. None of the Hallrich stores reimburse delivery drivers at the IRS standard business mileage rate.

71. Some of the Hallrich stores do not reimburse delivery drivers at a reasonable approximation of the delivery drivers' expenses.

72. None of the Hallrich stores reimburse delivery drivers at a reasonable approximation of the delivery drivers' expenses.

73. Plaintiff and similarly situated delivery drivers receive a per-mile reimbursement payment that is less than the IRS standard business mileage rate for each mile they drive while completing deliveries for Hallrich.

74. Plaintiff and similarly situated delivery drivers receive a per-mile reimbursement payment that ranges from $.25 to $.30 per mile.

75. Plaintiff and similarly situated delivery drivers typically average 7 to 8 miles per round-trip delivery.

76. According to the Internal Revenue Service, the standard mileage rate for the use of a car during the relevant time periods have been:

      a.    2015: 57.5 cents/mile
      b.    2016: 54 cents/mile
      c.    2017: 53.5 cents/mile
      d.    2018: 54.5 cents/mile

77. The delivery drivers at Hallrich have incurred even more in expenses than those contemplated by the IRS standard business mileage rate—*e.g.*, cell phone and data charges, and damage caused from the "topper."

78. As a result of the automobile and other job-related expenses incurred by Plaintiff and other similarly situated delivery drivers, they were deprived of minimum wages guaranteed to them by the FLSA and Ohio law.

79. At all relevant times, Defendants have applied the same pay policies, practices, and procedures to all delivery drivers at the Hallrich stores.

80. All of Defendants' delivery drivers had similar experiences to that of Plaintiff. They completed similar job duties, were subject to the same reimbursement policy; received similar reimbursement payments; incurred similar automobile expenses; completed deliveries of similar distances and at similar frequencies; and were paid at or near the applicable minimum wage rate or a tipped wage rate before deducting unreimbursed vehicle costs.

81. Regardless of the precise amount of the reimbursement formula at any given point in time, Defendants' reimbursement formula has resulted in an unreasonable underestimation of delivery drivers' automobile expenses throughout the recovery period, causing systematic violations of the minimum wage laws.

10

82.     Because Defendants paid their drivers a gross hourly wage at precisely, or at least very close to, the applicable minimum wage, and because the delivery drivers incurred unreimbursed automobile expenses, the delivery drivers "kicked back" to Defendants an amount sufficient to cause minimum wage violations. *See* 29 C.F.R. § 531.35.

83.     Defendants are relying on the same flawed policy and methodology with respect to all delivery drivers at all of the Hallrich stores.

84.     Defendants have failed to properly take a tip credit from Plaintiffs' wages and the wages of similarly situated employees because, after accounting for unreimbursed expenses, Defendants have paid delivery drivers a lower wage rate than they informed the delivery drivers they would be paid.

85.     Defendants have willfully failed to pay federal and Ohio state minimum wage to Plaintiff and similarly situated delivery drivers at the Hallrich stores.

**Plaintiff's Individual Factual Allegations**

86.     Plaintiff has worked at Hallrich from approximately October 2016 until present at their Greenville, Ohio location.

87.     Plaintiff is paid minimum wage minus a tip credit as an hourly rate for all hours worked while delivering food.

88.     Plaintiff earns under $5 per hour while out on deliveries.

89.     Plaintiff delivers pizza and other food items to Defendants' customers' homes and businesses.

11

90.     When he is not making deliveries, Plaintiff works inside the restaurant, completing tasks such as taking orders, preparing vegetables, sweeping, mopping, and/or doing other tasks necessary for the operation of the restaurant.

91.     Plaintiff has been paid minimum wage or slightly above minimum wage for the hours he works inside the restaurant.

92.     Plaintiff is reimbursed on a per mile basis for each mile he drives while completing deliveries for Defendants.

93.     Plaintiff receives $.29 per mile he drives while completing deliveries for Defendants.

94.     Plaintiff is required to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

95.     Plaintiff is required to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, cell phone service, GPS service, automobile financing, and other equipment necessary for delivery drivers to complete their job duties.

96.     Plaintiff is also required to place a Pizza Hut logo "topper" magnet on his car when he completes deliveries.

97.     The "topper" has caused dents to Plaintiff's car.

98.     Plaintiff has complained to Defendants about having to use the topper and the damage it causes to his car.

99.     Plaintiff has purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage,

automobile financing, and incur cell phone and data charges all for the primary benefit of Defendants.

100.    Defendants do not track the actual expenses incurred by Plaintiff.

101.    Defendants do not reimburse Plaintiff based on his actual delivery-related expenses.

102.    Plaintiff is not reimbursed at the IRS standard mileage rate for the miles he drives while completing deliveries.

103.    During Plaintiff's employment with Defendants, Defendants failed to adequately reimburse Plaintiff for automobile and other job-related expenses.

104.    Plaintiff regularly makes approximately 1 to 4 deliveries per hour during the hours he works as a delivery driver.

105.    Plaintiff regularly drove between 7-8 miles round trip per delivery.

106.    In 2018, for example, the IRS business mileage reimbursement has been $.545 per mile, which reasonably approximated the automobile expenses incurred delivering pizzas. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. Using that IRS rate as a reasonable approximation of Plaintiff's automobile expenses, every mile driven on the job decreased her net wages by approximately $.255 ($.545 - $.29) per mile. Considering Plaintiff's estimate of about 7.5 average miles per delivery, Defendants under-reimbursed her about $1.91 per delivery ($.255 x 7.5 average miles).

107.    Thus, while making deliveries, Plaintiff consistently "kicked back" to Defendants approximately $5.73 per hour ($1.91 per delivery x 3 deliveries per hour).

108.    Defendants have failed to properly take a tip credit from Plaintiffs' wages because, after accounting for unreimbursed expenses, Defendants have taken more of a tip credit than they informed Plaintiff they would be taking.

109.    As a result of unreimbursed automobile expenses and other job-related expenses, Defendants have failed to pay Plaintiff minimum wage as required by law.

### Collective Action Allegations

110.    Plaintiff brings the First Count on behalf of himself and all similarly situated current and former delivery drivers employed at the Hallrich restaurants owned, operated, and controlled by Defendants nationwide, during the three years prior to the filing of this Class Action Complaint and the date of final judgment in this matter, who elect to opt-in to this action (the "FLSA Collective").

111.    At all relevant times, Plaintiff and the FLSA Collective have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to Defendants' decision, policy, plan, practices, procedures, protocols, and rules of willfully refusing to pay Plaintiff and the FLSA Collective minimum wage for all hours worked and failing to reimburse delivery drivers for automobile expenses and other job-related expenses. Plaintiff's claims are essentially the same as those of the FLSA Collective.

112.    Defendants' unlawful conduct is pursuant to a corporate policy or practice.

113.    Defendants are aware or should have been aware that federal law required them to pay employees minimum wage for all hours worked and to fully reimburse for "tools of the trade."

114.    Defendants' unlawful conduct has been widespread, repeated, and consistent.

14

115.    The First Count are properly brought under and maintained as an opt-in collective action under 29 U.S.C. § 216(b).

116.    The FLSA Collective members are readily identifiable and ascertainable.

117.    In recognition of the services Plaintiff has rendered and will continue to render to the FLSA Collective, Plaintiff will request payment of a service award upon resolution of this action.

### Class Action Allegations

118.    Plaintiff brings the Second, Third, and Fourth Counts under Federal Rule of Civil Procedure 23, on behalf of himself and a class of persons consisting of:

> All current and former delivery drivers employed by Defendant at Hallrich stores in the State of Ohio between the date three years prior to the filing of the original complaint and the date of final judgment in this matter ("Rule 23 Class").

119.    Excluded from the Rule 23 Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Class.

120.    The number and identity of the Rule 23 Class members are ascertainable from Defendants' records.

121.    The hours assigned and worked, the positions held, deliveries completed, and the rates of pay and reimbursements paid for each Rule 23 Class Member are determinable from Defendants' records.

122.    For the purpose of notice and other purposes related to this action, their names and contact information are readily available from Defendants.

123.    Notice can be provided by means permissible under Rule 23.

124.    The Rule 23 Class member are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

125.    There are more than 50 Rule 23 Class members.

126.    Plaintiff's claims are typical of those claims which could be alleged by any Rule 23 Class member, and the relief sought is typical of the relief which would be sought by each Rule 23 Class member in separate actions.

127.    Plaintiff and the Rule 23 Class members have all sustained similar types of damages as a result of Defendants' failure to comply with Section 34a and O.R.C. § 4113.15.

128.    Plaintiff and the Rule 23 Class members sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

129.    By seeking to represent the interests of the Rule 23 Class members, Plaintiff is exercising and intends to exercise his right to engage in concerted activity for the mutual aid or benefit of himself and his co-workers.

130.    Plaintiff is able to fairly and adequately protect the interests of the Rule 23 Class and has no interests antagonistic to the Rule 23 Class.

131.    Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

132.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of

minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

133.    Upon information and belief, Defendants and other employers throughout the state violate Section 34a and O.R.C. § 4113.15. Current employees are often afraid to assert their rights out of fear of direct and indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

134.    This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

135.    Common questions of law and fact exist as to the Rule 23 Class that predominate over any questions only affecting Plaintiff and the Rule 23 Class members individually and include, but are not limited to:

      a.  Whether Plaintiff and the Rule 23 Class members were subject to a common expense reimbursement policy that resulted in wages to drop below legally allowable minimum wage and overtime;

      b.  Whether Plaintiff and the Rule 23 Class were subject to a policy that required them to maintain and pay for safe, operable, and legally compliant automobiles to use in completing deliveries;

c. Whether Plaintiff and the Rule 23 Class incurred expenses for the benefit of Defendants in the course of completing deliveries;

d. Whether Defendants reimbursed Plaintiff and the Rule 23 Class members for their actual expenses;

e. Whether Defendants reimbursed Plaintiff and the Rule 23 Class members at the IRS standard business mileage rate for the miles they drove in making deliveries;

f. Whether Defendants reimbursed Plaintiff and the Rule 23 Class members based on a reasonable approximation of the expenses they incurred;

g. Whether Plaintiff and the Rule 23 Class completed non-tipped job duties for which they were paid a tipped wage rate;

h. Whether Defendants failed to pay Plaintiff and the Rule 23 Class in a timely manner as described by O.R.C. § 4113.15, and, if so, whether the wages owed are "in dispute"; and

i. The nature and extent of class-wide injury and the measure of damages for those injuries.

136. In recognition of the services Plaintiff has rendered and will continue to render to the Rule 23 Class, Plaintiff will request payment of a service award upon resolution of this action.

## Causes of Action

### Count 1
### Failure to Pay Minimum Wages - Fair Labor Standards Act
### (On Behalf of Plaintiff and the FLSA Collective)

137. Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

138. Plaintiff and the FLSA Collective are or were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked.

18

139.    Defendants failed to properly claim a tip credit from the wages of Plaintiff and the FLSA collective because Plaintiff and the FLSA collective were paid a wage rate lower than Defendants informed them that they would be paid.

140.    Defendants paid Plaintiff and the FLSA Collective at or close to minimum wage for all hours worked.

141.    Defendants required and continue to require Plaintiff and the FLSA Collective to pay for automobile expenses and other job-related expenses out of pocket, and failed to properly reimburse Plaintiff and the FLSA Collective for said expenses.

142.    By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Plaintiff and the FLSA Collective.

143.    Plaintiff and the FLSA Collective have been damaged by Defendants' willful failure to pay minimum wage as required by law.

144.    As a result of Defendants' willful violations, Plaintiff and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

**Count 2**
**Failure to Pay Minimum Wages - Ohio Constitution, Article II, § 34a**
**(On Behalf of Plaintiff and the Rule 23 Class)**

145.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

146.    Defendants paid Plaintiff and the Rule 23 Class below minimum wage for the hours they worked by requiring them to cover automobile expenses and other job-related expenses.

147.    Defendants ostensibly paid Plaintiff and the Rule 23 Class at or close to minimum wage for the hours they worked.

148.    Because Defendants required Plaintiff and the Rule 23 Class to pay for automobile expenses and other job-related expenses out of pocket, Defendants failed pay Plaintiff and the Rule 23 Class minimum wage.

149.    By not paying Plaintiff and the Rule 23 Class at least minimum wage for each hour worked, Defendants has violated the Ohio Constitution, Article II, § 34a.

150.    As a result of Defendants' violations, Plaintiff and the Rule 23 Class are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, an additional two times unpaid wages/unreimbursed expenses in damages under Section 34a, costs, and attorneys' fees.

**Count 3**
**Untimely Payment of Wages – O.R.C. § 4113.15**
**(On Behalf of Plaintiff and the Rule 23 Class)**

151.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

152.    During all relevant times, Defendants were covered by O.R.C. § 4113.15, and Plaintiff and the Rule 23 Class were employees within the meaning of O.R.C. § 4113.15 and were not exempt from its protections.

153.    O.R.C. § 4113.15(A) requires that Defendants pay Plaintiff and the Rule 23 Class all wages on or before the first day of each month, for wages earned during the first half of the preceding month ending with the fifteenth day thereof, and on or before the fifteenth day of each month, for wages earned during the last half of the preceding calendar month.

154.    By failing to pay Plaintiff and the Rule 23 Class all wages due to them under the FLSA and Ohio Constitution, Defendants have also violated the Ohio Prompt Pay Act.

155.    Plaintiff and the Rule 23 Class's unpaid wages and unreimbursed expenses have remained unpaid for more than thirty (30) days beyond their regularly scheduled payday.

156.    In violating Ohio law, Defendants acted willfully, without a good faith basis and with reckless disregard to Ohio law.

157.    As a result of Defendants' willful violation, Plaintiff and the Rule 23 Class are entitled to unpaid wages and liquidated damages, as stated in O.R.C. § 4113.15.

### Count 4
### Damages Pursuant to O.R.C. § 2307.60
### (On Behalf of Plaintiff and the Rule 23 Class)

158.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

159.    The Fair Labor Standards Act, 29 U.S.C. § 216(a), imposes criminal penalties for willful violations of the FLSA.

160.    By their acts and omissions described herein, Defendants have willfully violated the FLSA, and Plaintiff and the Rule 23 Class have been injured as a result.

161.    O.R.C. § 2307.60 permits anyone injured in person or property by a criminal act to recover damages in a civil action, including exemplary and punitive damages.

162.    As a result of Defendants' willful violations of the FLSA, Plaintiff and the Rule 23 Class are entitled to compensatory and punitive damages pursuant to O.R.C. § 2307.60.

**WHEREFORE**, Plaintiff Mark Jefferis prays for all of the following relief:

A. Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly-situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Plaintiff and their counsel to represent the collective action members.

B. Unpaid minimum wages, reimbursement of expenses, and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations.

C. Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

D. Designation of Plaintiff as representative of the Rule 23 Class and counsel of record as Class Counsel.

E. A declaratory judgment that the practices complained of herein are unlawful under Section 34a and O.R.C. § 4113.15.

F. An award of unpaid minimum wages and unreimbursed expenses due under Section 34a.

G. An award of damages under Section 34a, based on Defendants' failure to pay minimum wages, calculated as an additional two times of back wages.

H. Liquidated damages under O.R.C. § 4113.15.

I. Compensatory and punitive damages under O.R.C. § 2307.60.

J. An award of prejudgment and post-judgment interest.

K. An award of costs and expenses of this action, together with reasonable attorneys' fees and expert fees.

L. Such other legal and equitable relief as the Court deems appropriate.

Respectfully submitted,

/s/ Andrew Kimble
Andrew Biller (0081452) (Lead Counsel)
Andrew Kimble (0093172)
Philip Krzeski (0095713)
Markovits, Stock & DeMarco, LLC
3825 Edwards Road, Suite 650
513-651-3700 (Phone)
513-665-0219 (Fax)
(*abiller@msdlegal.com*)
(*akimble@msdlegal.com*)
(*pkrzeski@msdlegal.com*)

www.msdlegal.com

*Counsel for Plaintiff and the putative class*

## JURY DEMAND

Plaintiff hereby demands a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.

/s/ Andrew Kimble
Andrew Kimble