UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MARK JEFFERIS,
Plaintiff,

vs.

HALLRICH INCORPORATED, et al.,
Defendants.

Case No. 1:18-cv-687
Dlott, J.
Litkovitz, M.J.

**REPORT AND RECOMMENDATION**

Plaintiff Mark Jefferis and putative Opt-In plaintiff Katie Reeder, on behalf of themselves and similarly-situated individuals, bring this action against defendants Hallrich Incorporated ("Hallrich") and A.E. Szambecki alleging claims under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 et seq.; the Ohio Constitution, Article II, Section 34a; the Ohio Prompt Pay Act, Ohio Rev. Code § 4113.15; and Ohio Rev. Code § 2307.60. Plaintiffs allege defendants violated federal and state law by failing to adequately reimburse the pizza delivery drivers they employed for delivery-related expenses, thereby failing to pay the legally-mandated minimum wage for all hours worked. This matter is before the Court on defendants' motion to dismiss plaintiffs' class and collective action for lack of subject matter jurisdiction and to compel mediation and arbitration (Doc. 11), plaintiffs' response in opposition (Doc. 14), and defendants' reply memorandum (Doc. 16).[1]

---

[1] Plaintiff requests oral argument on the motion. (Doc. 14). The legal and factual issues involved in this case are not complex and have been fully briefed by the parties, and the parties' dispute is not a matter of public importance. Pursuant to S.D. Ohio Civ. R. 7.1(b)(2), the Court therefore finds that oral argument is not "essential to the fair resolution" of this case and plaintiff's request for same is denied.

## I. Factual Background

Defendant Hallrich is a Pizza Hut International Franchisee that operates in several states and employs or employed plaintiffs. Defendant Szambecki is the Chief Executive Officer of Hallrich.

Plaintiffs are or were employed as pizza delivery drivers for defendants' pizza franchise in Ohio. Plaintiffs were required to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering defendants' pizza and other food items. Plaintiffs alleged they were paid minimum wage or slightly above minimum wage for the hours they worked inside the restaurant. Plaintiffs allege they were paid minimum wage minus a tip credit for the hours they worked while completing deliveries, and they were not reimbursed for their actual expenses or at the Internal Revenue Service standard business mileage rate. Plaintiffs allege that as a result of the automobile and other job-related expenses they incurred as delivery drivers, they were deprived of minimum wages guaranteed to them by the FLSA and Ohio law. (Doc. 1, ¶¶ 51-78).

During the hiring process at Hallrich, employees are required to electronically sign a "Dispute Resolution Plan" ("the Plan"). The Plan states that "it is intended to create an exclusive mechanism for the final resolution of all Disputes falling within its terms." (Doc. 11-2, Smith Aff., ¶ 12, Ex. 1 at 1, ¶ 1). The Plan states that it applies to "any matter related to the relationship between [Plaintiffs] and The Company,"[2] including any allegations of "wage disputes over compensation, expense reimbursement, [or] wages[.]" (*Id.* at ¶ 13, Ex. 1 at 2, ¶ 4B4). The Plan outlines a two-step process that an aggrieved party must complete in order to seek recovery for a claim against Hallrich. First, the dispute must be submitted to mediation within six months of the date of the incident giving rise to the dispute. Second, if the dispute is

---

[2] "The Company" is defined as Hallrich and its officers, directors, and various managerial and supervisory personnel. (Doc. 11-2, Smith Aff., ¶ 14, Ex. 1 at 1, ¶ 2c).

not resolved through mediation, the aggrieved party must initiate arbitration proceedings within 14 days from the date the mediation process has been concluded or within 45 days of the date mediation was requested. Failure of a party to comply with the time limits under the Plan bars relief to the aggrieved party. (*Id.*, Ex. 1 at 3-4, ¶¶ 5-6). The Plan further provides in relevant part:

> The Plan shall be the exclusive, final and binding method by which Disputes are resolved. Any proceedings under The Plan shall occur only on an individual basis and not as a class, collective, representative, private attorney general or consolidated action. Consequently, the commencement of proceedings under this Plan shall be a condition precedent to the initiation of any legal action by an Employee against The Company and any such legal action shall be limited to those actions available under [the FAA]. Except as provided herein, the Parties shall have no right to litigate, whether on behalf of or as part of any purported class, collective, representative, private attorney general or consolidated action (collectively referred to as "Class Action"), any Dispute in any other forum.
>
> Furthermore, no Party to this Plan may initiate a Class Action in court or in arbitration in order to pursue any Dispute that is subject to the proceedings under The Plan. Moreover, no Party may join a Class Action or Participate as a member of a Class Action instituted by someone else in court or in arbitration in order to pursue any claims that are subject to proceedings under The Plan. It is the Parties' intent to the fullest extent permitted by law to waive any and all rights to the application of Class Action procedures or remedies with respect to all Disputes subject to this Plan. It is also expressly agreed that any arbitrator adjudicating Disputes under this Plan shall have no power or authority to adjudicate Class Action claims or proceedings. The waiver of Class Action Disputes and proceedings is an essential and material term of the Plan.

(*Id.*, Ex. 1 at 1-2, ¶ 3). The Plan also includes a provision for amendments to the Plan:

> 1. This Plan may be amended by The Company at any time and from time-to-time. However, no amendment shall apply to a Dispute of which The Company had actual notice on the date of the amendment.
>
> 2. No amendment will be effective:
>
>> a. Until notice of the amendment is sent to the AAA [American Arbitration Association] and to those Employees described in paragraph 2.E;[3] or

---

[3] This paragraph of the Plan defines "employee" to include applicants for employment and current and former employees who have signed a Dispute Resolution Plan Acknowledgement of Receipt and Agreement to Be Bound Form. (*Id.*, Ex. 1 at 5, ¶ 2E).

3

b. As to a Dispute of which The Company had actual notice (by notice of intent to arbitrate or otherwise) on the date of amendment.

(*Id.*, Ex. 1 at 10-11, ¶ 8D). The Plan also provides that it "may be terminated by The Company at any time. However, such termination shall not be effective: 1. Until sixty (60) days after notice of such termination is given to Employees; or 2. As to any Disputes which arose prior to the date of such termination." (*Id.*, at ¶ 8E). Plaintiffs signed the Plan during new employee onboarding at the company. (*Id.*, at ¶¶ 7, 9).

## II. The Parties' Arguments

Defendants move to compel mediation and arbitration in accordance with the terms of the Plan. Defendants allege that plaintiffs' claims arise from their respective employment with Hallrich, and the Class and Collective Action Complaint alleges workplace-related claims under the FLSA and Ohio law. Defendants contend that because plaintiffs' claims are covered by the Plan, the Court should compel mediation and arbitration and dismiss this lawsuit.

Plaintiffs oppose defendants' motion to compel mediation and arbitration on three bases: (1) the Plan signed by plaintiffs is an illusory promise, not a contract, and is unenforceable; (2) the Plan attempts to illegally waive the relevant statute of limitations; and (3) the Plan violates the Ohio Constitution, Article II, Section 34a.

## III. Resolution

The Federal Arbitration Act ("FAA") allows for a "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (citing 9 U.S.C. § 2). *See also Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018). The goal of the FAA is to "ensure that private agreements to arbitrate are enforced according to their terms." *Volt Info. Scis., Inc. v. Bd. of Tr. of Leland Stanford, Jr. Univ.*, 489 U.S. 468, 479

4

(1989). The Supreme Court has emphasized that the FAA "requires courts 'rigorously' to 'enforce arbitration agreements according to their terms, including terms that specify *with whom* the parties choose to arbitrate their disputes and *the rules* under which that arbitration will be conducted.'" *Epic Sys. Corp.*, 138 S. Ct. at 1621 (emphasis in original) (quoting *American Express Co. v. Italian Colors Restaurant*, 570 U.S. 228, 233 (2013)).

In considering a motion to compel arbitration, courts should "treat the facts as they would in ruling on a summary judgment motion, construing all facts and reasonable inferences that can be drawn therefrom in a light most favorable to the nonmoving party." *Great Am. Ins. Co. v. Gemma Power Sys., LLC*, No. 1:18-cv-213, 2018 WL 6003968, at *2 (S.D. Ohio Nov. 15, 2018) (quoting *Raasch v. NCR Corp.*, 254 F. Supp. 2d 847, 851 (S.D. Ohio 2003)). In order to defeat a motion to compel arbitration, the nonmovant has the burden to "show a genuine [dispute] of material fact as to the validity of the agreement to arbitrate." *Danley v. Encore Capital Grp., Inc.*, 680 F. App'x 394, 397 (6th Cir. 2017) (quoting *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002)).

As the Sixth Circuit has explained:

> "Before compelling an unwilling party to arbitrate, the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Javitch v. First Union Securities, Inc.*, 315 F.3d 619, 624 (6th Cir. 2003). "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone*, 460 U.S. at 24-25. "[T]here is a general presumption of arbitrability, and any doubts are to be resolved in favor of arbitration 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'"

*H.H. Franchising Sys., Inc. v. Pawson*, No. 1:17-cv-368, 2018 WL 1456131, at *3 (S.D. Ohio Mar. 23, 2018) (Dlott, J.) (quoting *Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 627 (6th

Cir. 2004)). In determining the enforceability of an arbitration agreement, courts apply state law of contract formation. *Richmond Health Facilities v. Nichols*, 811 F.3d 192, 195 (6th Cir. 2016).

**A. Whether the Plan governing arbitration is invalid as an illusory promise.**

The Court must first determine whether a valid arbitration agreement exists between the parties. Under Ohio law, which governs the parties' agreement in this case, the elements of a valid contract include an offer, acceptance, mutual assent, and consideration. *Kostelnik v. Helper*, 770 N.E.2d 58, 61 (Ohio 2002). At issue in this case is the element of consideration, which is a necessary element for a binding contract. *See Harmon v. Philip Morris Inc.*, 697 N.E.2d 270, 271 (Ohio Ct. App. 1997). *See also* Restatement (Second) of Contracts § 17 (1981) ("the formation of a contract requires a bargain in which there is a manifestation of mutual assent to the exchange and a consideration."). "Consideration may consist of either a detriment to the promisee or a benefit to the promisor." *Brads v. First Baptist Church*, 624 N.E.2d 737, 743 (Ohio Ct. App. 1993). "A promise of payment for employment constitutes consideration only when it creates a mutually binding obligation on behalf of both employee and employer." *Blakley v. UBS Fin. Servs. Inc.*, No. 1:12-cv-30, 2013 WL 360378, at *6 (S.D. Ohio Jan. 30, 2013) (Report and Recommendation) (citing *Stanich v. Hissong Group, Inc.*, No. 2:09-cv-143, 2010 WL 3732129, at *5 (S.D. Ohio Sept. 20, 2010), *adopted*, 2013 WL 866470 (S.D. Ohio Mar. 7, 2013). "The concept of mutuality of obligation requires that both parties to a contract be bound by its terms." *Stepp v. NCR Corp.*, 494 F. Supp. 2d 826, 834 (S.D. Ohio 2007) (citing *Raasch*, 254 F. Supp. 2d at 855); *see also Redmond v. Big Sandy Furniture, Inc.*, No. 08CA12, 2008 WL 4966549 (Ohio Ct. App. Nov. 19, 2018) ("[T]he concept of 'mutuality of obligation' expresses the idea that both parties to the contract must be bound or neither is bound.") (quoting *Helle v. Landmark, Inc.*, 472 N.E.2d 765, 776 (Ohio Ct. App. 1984)).

Plaintiffs contend there is no valid arbitration agreement between the parties because the Plan they signed as a condition of employment is unsupported by consideration. Plaintiffs allege there is no mutuality of obligation binding both parties because defendants retain the right to unilaterally change or terminate the terms of the Plan without the employees' consent. Plaintiffs argue that they cannot accept or reject any amendments to the Plan, and because the Plan gives defendants "an 'unlimited right' to set the terms of arbitration, it is illusory, and unenforceable." (Doc. 14 at 8, citing *Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306, 316 (6th Cir. 2000)).

"An illusory promise is essentially an empty one whereby performance by the promisor, here, the defendant, is entirely optional." *Blakley*, 2013 WL 360378, at *6 (citing *Stanich*, 2010 WL 3732129, at *5). *See also* Restatement (Second) of Contracts § 77 (1981) ("Illusory promises. Words of promise which by their terms make performance entirely optional with the 'promisor' do not constitute a promise."). In other words, "a contract is illusory only when by its terms the promisor retains an unlimited right to determine the nature or extent of his performance; the unlimited right, in effect, destroys his promise and thus makes it merely illusory." *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 667 (6th Cir. 2003) (en banc) (quoting *Century 21 American Landmark, Inc. v. McIntyre*, 427 N.E.2d 534 (1980)). The question here is whether defendants' promise to arbitrate is illusory because they retain the right to unilaterally amend or terminate the Plan terms at any time. The Court concludes defendants' promise to arbitrate under the Plan is not illusory and is supported by consideration such that the arbitration agreement is enforceable.

In *Floss*, the case on which plaintiffs rely, the plaintiffs-employees signed an arbitration agreement as a condition of employment. 211 F.3d at 309. Employees agreed to waive their

right to bring a federal court action and to arbitrate all employment disputes. The arbitration agreement was an agreement between the employee and a third-party dispute resolution provider and not between the employee and employer. *Id*. at 309-10. The Sixth Circuit held that the arbitration agreement was unenforceable because the third-party dispute resolution provider had unfettered discretion to unilaterally alter the applicable arbitration rules and procedures with no obligation to notify the employees. *Id*. at 314. The dispute resolution provider's promise to provide an arbitral forum did not create any binding obligation on the part of the provider and, therefore, gave no consideration in exchange for the employees' promise to arbitrate their disputes. The Sixth Circuit determined that the dispute resolution provider's promise was illusory, rendering the arbitration agreement unenforceable. *Id*.

The Plan in this case is distinguishable from that in *Floss*. Unlike the arbitration agreement in *Floss*, the Plan here permits defendants to unilaterally amend or terminate the Plan at any time, but it also requires defendants to give plaintiffs notice of any such amendment or termination before such amendment or termination will become effective. The Plan in the instant case is similar to arbitration agreements upheld by the Sixth Circuit and other courts, where the timing and notice requirements for amending or terminating the agreement limited the discretion of the employer. For example, in *Morrison*, 317 F.3d at 667-68, the Sixth Circuit enforced an arbitration agreement that gave the employer the unilateral right to alter the agreement where the agreement also required the employer to give notice of the changes to employees. The arbitration agreement in *Morrison* limited the employer's ability to amend or terminate the agreement to a specific date each year and upon giving 30-days' notice to employees. The Court of Appeals determined that the agreement's timing and notification requirements sufficiently limited the employer's ability to modify the agreement and constituted

8

consideration to preserve mutuality of obligation. *Id. See also Wolfe v. J.C. Penney Corp.*, 111 N.E.3d 126, 132 (Ohio Ct. App. 2018) ("An arbitration provision is enforceable if the right of modification is limited by a notice or timing provision."); *Bell v. Hollywood Entm't Corp.*, No. 87210, 2006 WL 2192053, at *2 (Ohio Ct. App. Aug. 3, 2006) (arbitration agreement enforceable where agreement was equally applicable to both employees and employer and employer was able to modify or terminate the agreement on only one day per year upon thirty-days' notice to employees); *Crowe v. BE & K, Inc.*, No. 2:09-CV-873, 2010 WL 1640884, at *4 (S.D. Ohio Apr. 22, 2010) (concluding based on Ohio law that a thirty-day-notice provision constitutes sufficient consideration to form a binding agreement).[4] Although the Plan here permits Hallrich to amend or terminate the Plan "at any time," the Plan also provides that "no amendment shall apply to a Dispute of which The Company had actual notice on the date of the amendment" or "[u]ntil notice of the amendment is sent to the AAA and to . . . Employees. . . ." (*Id.*, Ex. 1 at 10-11, ¶ 8D). Likewise, any proposed termination of the Plan is not effective "[u]ntil (60) days after notice of such termination is given to Employees" and is not effective as to disputes which arose prior to the date of termination. (*Id.*, at ¶ 8E). Because the Plan has notice and timing requirements that limit defendants' ability to amend or terminate the Plan, defendants' promise to arbitrate is not illusory and does not lack consideration.

In addition, the Plan in this case provides that any amendment or termination of the Plan cannot affect disputes arising prior to the effective date of such actions. (*Id.*, Ex. 1 at 10-11, ¶¶ 8D & E). Plaintiffs do not contend that defendants have actually amended the agreement, and

---

[4] The cases cited by plaintiffs are distinguishable in that the arbitration agreements in those cases did not require the employer to give notice to employees before modifying the arbitration agreement. *See, e.g., Day v. Fortune Hi-Tech Mktg., Inc.*, 536 F. App'x 600, 604 (6th Cir. 2013); *Floss*, 211 F.3d at 315-16; *Stanich*, 2010 WL 3732129, at *6; *Stepp v. NCR Corp.*, 494 F. Supp. 2d 826, 834-35 (S.D. Ohio 2007).

9

the Plan explicitly provides that any future amendments cannot apply to plaintiffs' disputes. *Id.* Because defendants have actual notice of plaintiffs' claims, defendants are contractually bound to arbitrate such claims. The Plan does not make defendants' performance optional such that defendants' agreement to submit to arbitration is illusory. *See Wolfe*, 111 N.E.3d at 132.

Finally, both plaintiffs and defendants are bound by the arbitration agreement. Hallrich has agreed to submit its own disputes to arbitration, which provides a basis for consideration. (*Id.*, Ex. 1 at 6, ¶ 4). "This reciprocal obligation to arbitrate satisfies the mutuality requirement." *Howell v. Rivergate Toyota, Inc.*, 144 F. App'x 475, 480 (6th Cir. 2005) (citing *Cooper v. MRM Inv. Co.*, 367 F.3d 493, 505 (6th Cir. 2004)). *See also Crowe*, 2010 WL 1640884, at *4 (holding that a clause in an arbitration agreement allowing an employer to unilaterally amend the agreement was not illusory because the employer was obligated "to submit disputes they may have against employees to binding arbitration").

Accordingly, the Plan does not give defendants an unfettered right to alter the terms of the Plan such that it is unenforceable for lack of mutuality of obligation. Defendants' motion to compel should not be denied on this basis.

**B. Whether the Plan attempts to illegally waive the relevant statute of limitations.**

The Plan requires that an employee with a dispute first submit the dispute to mediation. (Doc. 11-2, Smith Aff., Ex. 1 at 7, ¶ 5). The Plan provides that a request for mediation "must be filed within six (6) months of the date of the occurrence of the event which gave rise to the Dispute or within some alternative period of time agreed upon by the Parties," and "[t]he Parties waive any statute of limitations to the contrary. . . ." (*Id.*). If the mediation is unsuccessful, an employee has 14 days to file a claim for arbitration. (*Id.* at ¶ 6). Failure of a party to comply

10

with the timelines of either the mediation or arbitration provision bars that party's claim for relief. (*Id*. at ¶¶ 5-6).

Plaintiffs allege the Plan is invalid because its provisions requiring initiation of mediation within six months of accrual of an FLSA claim and arbitration within 14 days thereafter are unenforceable under the FLSA. Plaintiffs contend the provisions shortening the time for asserting a claim extinguish the substantive right to recovery otherwise afforded under the FLSA.

The FLSA requires "that employers pay a federally-established minimum wage, as well as overtime, to certain types of employees." *Boaz v. FedEx Customer Info. Servs., Inc.*, 725 F.3d 603, 605 (6th Cir. 2013) (citing 29 U.S.C. §§ 206(a), 207(a)). "An employer who violates the FLSA must pay the affected employee 'the amount of their unpaid minimum wages, or their unpaid overtime compensation . . . and [] an additional equal amount as liquidated damages.'" *Id*. (citing 29 U.S.C. § 216(b)). The FLSA provides for a two-year statute of limitations period for non-willful violations and a three-year statute of limitations period for willful violations. 29 U.S.C. § 255(a).

The Sixth Circuit has held that an employment agreement that contractually shortens the FLSA statute of limitations period circumvents an employee's right to minimum wages, overtime, or liquidated damages under the FLSA and is unenforceable. *Boaz*, 725 F.3d at 606-07. The Court of Appeals recognized that the Supreme Court has long forbidden employers from requiring their employees to "either prospectively or retrospectively, waive their FLSA rights to minimum wages, overtime, or liquidated damages." *Id*. at 606 (citing *D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108, 114 (1946); *Brooklyn Savs. Bank v. O'Neil*, 324 U.S. 697, 707 (1945)). "Such waivers . . . would 'nullify' the Act's purpose of 'achiev[ing] a uniform national policy of guaranteeing compensation for all work or employment engaged in by employees covered by the

11

Act.'" *Id.* (citing *Jewell Ridge Coal Corp. v. Local No. 6167, United Mine Workers of Am.*, 325 U.S. 161, 167 (1945)). Therefore, where an employment agreement requires that claims be brought within six months, as opposed to the FLSA's two-year or three-year limitations period, the agreement operates as an impermissible waiver of the employee's FLSA rights and is invalid. *Id. See also Hackler v. R.T. Moore Co.*, No. 2:17-cv-262, 2017 WL 6535856, at *4 (M.D. Fla. Dec. 21, 2017) (arbitration agreement which shortened the limitations period for FLSA claim was unenforceable because it "interfere[d] with substantive rights under the FLSA by precluding [the] plaintiff from recovering what he would potentially otherwise be able to recover" had he "brought his claim in the district court"); *Taylor v. Am. Income Life Ins. Co.*, No. 1:13-cv-31, 2013 WL 2087359, at *3 (N.D. Ohio May 14, 2013) (finding 30-day statute of limitations period "all but eliminates [the FLSA] statute-of-limitations period and practically eviscerates an employee's right to relief"); *Mazurkiewicz v. Clayton Homes, Inc.*, 971 F. Supp. 2d 682, 692 (S.D. Tex. 2013) (finding a six-month statute of limitations against employee's FLSA claim would "drastically reduce an employee's available recovery" and "do away with the congressional determination that employers who willfully violate the statute should be subject to greater liability than those whose violations are inadvertent"); *Pruiett v. West End Restaurants, LLC*, No. 3:11-00747, 2011 WL 5520969, at *5 (M.D. Tenn. Nov. 14, 2011) (arbitration agreement's one-year statute of limitations "necessarily preclude[d] a successful plaintiff from receiving full compensatory recovery under the [FLSA]" and was unenforceable).

The Plan in this case effectively reduces the FLSA limitation period to six months (for mediation) and fourteen days thereafter (for arbitration) and substantially reduces plaintiffs' ability to be fully compensated under the Act. As such, the Plan's limitations periods are prohibited and unenforceable. *Boaz*, 725 F.3d at 606-07.

In view of the prohibited limitation provision in the Plan, plaintiffs request that the Court find the entire Plan to be unenforceable. Defendants contend that the prohibited provision should be severed, and the Court should enforce the remainder of the Plan.

Severability of unenforceable provisions of an arbitration agreement involves a question of law for the Court. *Morrison*, 317 F.3d at 674. The resolution of the issue depends on the intent of the parties to the agreement. *Id.* at 674-75 (citing *Toledo Police Patrolmen's Ass'n v. City of Toledo*, 641 N.E.2d 799, 803 (Ohio Ct. App. 1994), *appeal denied*, 639 N.E.2d 795 (Ohio 1994)). "[I]f a severability clause is included in an agreement, then such a clause expresses the parties' intentions in favor of severance." *Scovill v. WSYX/ABC*, 425 F.3d 1012, 1016 (6th Cir. 2005) (citing *Morrison*, 317 F.3d at 674-75). Where the parties' intention is clearly expressed in a severability provision and indicates a preference for severance, the Court should sever the offending provision unless the cumulative effect of the unenforceable provisions "taints" the remainder of the agreement and prevents a court from enforcing the agreement. *Id.* at 1016-17.

The Plan in this case includes a severability provision, which states:

**11. Severability**

The terms of this Plan are severable. The invalidity or unenforceability of any provision herein shall not affect the application of any other provision. Where possible, consistent with the purposes of The Plan, any otherwise invalid provision of The Plan may be reformed, and, as reformed, enforced. In the event a court of competent jurisdiction determines that any provision of The Plan is unenforceable or should be reformed, the Dispute shall then be resolved by the arbitrator under The Plan consistent with such court's determination.

(Doc. 11-2, Smith Aff., Ex. 1 at 16, ¶ 11).

The Plan is clear as to the parties' intent on severability of unenforceable provisions: such provisions should be severed from the Plan and the remainder of the Plan should be enforced. (Doc. 11-2, Smith Aff., ¶ 12, Ex. 1 at 1, ¶ 1). This is not a case "where the

13

unenforceable provisions are so overwhelming as to 'taint' the rest of the agreement." *Champness v. J.D. Byrider Sys., LLC*, No. 1:14-cv-730, 2015 WL 247924, at *10 (S.D. Ohio Jan. 20, 2015) (citing *Scovill*, 425 F.3d at 1017) (severing the unenforceable provision of Dispute Resolution Plan and enforcing remainder of arbitration agreement). Accordingly, the arbitration agreement should be enforced without regard to the provisions requiring initiation of mediation within six months of accrual of an FLSA claim and arbitration within 14 days thereafter.

### C. Whether the Plan violates the Ohio Constitution, Article II, Section 34a.

Plaintiffs allege that defendants' payment of below minimum wage for the hours they worked by requiring plaintiffs to cover automobile expenses and other job-related expenses violates the Ohio Constitution, Article II, § 34a. (Doc. 1, ¶¶ 145-150). Section 34a provides for a minimum wage and yearly increases based on inflation. Oh. Const., Art. II § 34a. With respect to civil actions, this section provides:

> An action for equitable and monetary relief may be brought against an employer by the attorney general and/or an employee or person acting on behalf of an employee or all similarly situated employees **in any court of competent jurisdiction** . . . for any violation of this section or any law or regulation implementing its provisions within three years of the violation or of when the violation ceased if it was of a continuing nature, or within one year after notification to the employee of final disposition by the state of a complaint for the same violation, whichever is later. **There shall be no exhaustion requirement, no procedural, pleading or burden of proof requirements beyond those that apply generally to civil suits in order to maintain** such action and no liability for costs or attorney's fees on an employee except upon a finding that such action was frivolous in accordance with the same standards that apply generally in civil suits.

*Id.* (emphasis added).

Plaintiffs contend that the Plan cannot be executed without violating Section 34a. They allege that a "proper reading of this [Constitutional] Amendment precludes arbitration altogether." (Doc. 14 at 11). Plaintiffs further argue that "at the very least, a plaintiff who is to be insulated from 'exhaustion' or 'procedural' requirements cannot be required to submit a

14

mediation request, submit a mediation statement, and attend confidential mediation before they are permitted to advance their Section 34a claims." They likewise contend that "improper pleadings burdens," such as the time limits for mediation and arbitration set forth in the Plan, violate this Constitutional provision. They allege these procedural requirements are so integral to the Plan that the entire Plan is tainted and therefore unenforceable. Plaintiffs further argue that they assert their claims directly under Section 34a, and not its implementing legislation, which allows for the arbitration of wage disputes. *Id.* They contend that Section 34a is self-executing, and the implementing legislation therefore does not apply in this case.

Defendants argue that Section 34a, as interpreted by plaintiffs, is preempted by the FAA, which governs the Plan.[5] They also contend there is nothing in the language of Section 34a that prohibits the mediation or arbitration of wage claims, and the implementing legislation of Section 34a specifically provides for alternative dispute resolution of minimum wage claims to include mediation and arbitration. (Doc. 16 at 11, n.4, citing Ohio Rev. Code § 4111.14(L)).[6] Defendants allege that the Plan encompasses plaintiffs' Section 34a claims, and plaintiffs should be required to comply with the terms of the Plan to mediate and, if they so choose, to arbitrate their claims.

---

[5] Section 9C of the Plan states, "The [FAA] shall apply to this Plan and any proceedings under the Plan, including any actions to compel, enforce, vacate, or confirm proceedings, awards, orders of any arbitrator, or settlements under the Plan." (Doc. 11-2, Smith Aff., Ex. 1 at 15, ¶ 9C).

[6] That Code section provides:

> In accordance with Section 34a of Article II, Ohio Constitution, there shall be no exhaustion requirement, no procedural, pleading, or burden of proof requirements beyond those that apply generally to civil suits in order to maintain such action and no liability for costs or attorney's fees on an employee except upon a finding that such action was frivolous in accordance with the same standards that apply generally in civil suits. *Nothing in division (L) of this section [i.e., this paragraph] affects the right of an employer and employee to agree to submit a dispute under this section to alternative dispute resolution, including, but not limited to, arbitration,* in lieu of maintaining the civil suit specified in division (K) of this section. . . .

Ohio Rev. Code § 4111.14(L) (emphasis added).

15

Plaintiffs have not developed to any extent their argument that a "proper reading of [Section 34a] precludes arbitration altogether." (Doc. 14 at 10-11). Assuming plaintiffs' interpretation of Section 34a is correct, the Constitutional Amendment does not foreclose execution of the Plan. Where "state law prohibits outright the arbitration of a particular type of claim, . . . [t]he conflicting rule is displaced by the FAA." *AT & T Mobility LLC v. Concepcion*, 563 U.S. 333, 341 (2011). *See also Preston v. Ferrer*, 552 U.S. 346, 359 (2008) ("When parties agree to arbitrate all questions arising under a contract, the FAA supersedes state laws lodging primary jurisdiction in another forum, whether judicial or administrative."); *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984) ("In enacting § 2 of the [FAA], Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration."). Thus, even accepting plaintiffs' contention that Section 34a "precludes arbitration altogether" and that they bring their claims directly under Section 34a, any right to a judicial forum potentially granted to plaintiffs under Section 34a would be preempted by the FAA in light of the parties' contractual agreement to mediate and arbitrate their disputes.

In addition to asserting that a plain reading of Section 34a precludes arbitration, plaintiffs contend that "at the very least," the statute prohibits imposing certain mediation and arbitration requirements on plaintiffs before they can pursue their Section 34a claims. (Doc. 14 at 11). They point to the Plan's timing restrictions on filing a request for mediation and arbitration under the Plan, which the Court has already found to be unenforceable, and the "procedural" or "exhaustion" requirements of submitting a mediation request and statement and attending mediation before their Section 34a claims may be resolved. In making their argument, plaintiffs implicitly assume that the challenged mediation and arbitration requirements of the Plan are

16

properly characterized as "exhaustion . . ., procedural, [or] pleading . . . requirements beyond those that apply generally in civil suits," and that as such the requirements violate Section 34a. (*Id.*, citing Oh. Const. Art. II § 34a). However, plaintiffs have not cited any authority that supports their assumption. They have not directed the Court to any case law or any other legal authority which indicates that provisions for mediation or arbitration are properly characterized as exhaustion, procedural, or pleading requirements that fall within the purview of Section 34a. There is, though, authority which undermines plaintiffs' position that an arbitration requirement violates Section 34a on this or any other ground. An Ohio Court of Appeals recently issued a decision finding that an employee's Section 34a claim was subject to arbitration. *See Jones v. Carrols, LLC*, 119 N.E.3d 453, 467 (Ohio Ct. App. 2019). Plaintiffs have not cited any contrary legal authority indicating that Section 34a wage claims cannot be submitted to mediation or arbitration because they are exhaustion, procedural, or pleading requirements as defined under that provision or because Section 34a otherwise precludes mediation or arbitration of such claims.[7]

Thus, plaintiffs have failed to explain how the Plan's requirements for mediation and arbitration deprive them of any rights or remedies under Section 34a. Plaintiffs have not cited any legal authority to support their position that a Section 34a wage claim cannot be submitted to mediation or arbitration. Plaintiffs' argument that the Plan violates Section 34a is not well-taken and plaintiffs should be required to submit their Section 34a claims to mediation and arbitration in accordance with the Plan.

---

[7] *Moua v. Optum Services, Inc.*, 320 F. Supp. 3d 1109 (C.D. Cal. 2018), the California district court case cited by plaintiffs for the proposition that a potentially severable provision of an arbitration agreement "taints the entirety of the agreement such that severance is not a viable option," does not address whether a wage claim under the Ohio Constitution, Section 34a can be enforced through arbitration. (Doc. 14 at 11).

17

**D. Whether this matter should be stayed or dismissed**

The Court must next determine if this matter should be stayed pending arbitration proceedings or be dismissed. The FAA requires that a court, "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties *stay the trial of the action* until such arbitration has been had in accordance with the terms of the agreement. . . ." 9 U.S.C. § 3 (emphasis added). However, dismissal, rather than a stay of proceedings, is proper where all remaining claims are arbitrable. *De Angelis v. Icon Entm't Grp. Inc.*, 364 F. Supp. 3d 787, 797 (S.D. Ohio 2019) (citing *Hensel v. Cargill, Inc.*, 1999 WL 993775 (6th Cir. Oct. 19, 1999) (table)). *See also Braxton v. O'Charley's Rest. Properties, LLC*, 1 F. Supp. 3d 722, 728-29 (W.D. Ky. 2014) (the Sixth Circuit follows the approach that a court may dismiss the action if all the claims in the suit will be referred to arbitration); *Napier v. W. Chester Hosp., LLC*, No. 1:18-cv-00234, 2019 WL 1317859, at *2 (S.D. Ohio Mar. 22, 2019) ("The Court is within its discretion to dismiss a case where all claims are subject to arbitration.") (citing *Green v. Ameritech Corp.*, 200 F.3d 967, 973 (6th Cir. 2000)); *Belmont Med. Care, LLC v. Cmty. Ins. Co.*, No. 2:18-cv-968, 2019 WL 1676003, at *6 (S.D. Ohio Apr. 17, 2019) (same). In this case, the Court determines that the Plan, with the severance of the provisions specifying a six-month limitation period (for mediation) and fourteen-day limitation period (for arbitration), is enforceable and all of plaintiffs' claims are subject to arbitration. Therefore, the Court concludes that dismissal without prejudice, rather than a stay of proceedings pending the conclusion of arbitration, is appropriate. *See Napier*, 2019 WL 1317859, at *3.

## IV. Conclusion

Based on the foregoing, it is **RECOMMENDED**: (1) defendants' motion to dismiss plaintiffs' class and collective action for lack of subject matter jurisdiction and to compel mediation and arbitration (Doc. 11) should be **GRANTED**; (2) the arbitration agreement should be enforced without regard to the provisions requiring initiation of mediation within six months of accrual of an FLSA claim and arbitration within 14 days thereafter; and (3) this case should be **DISMISSED** without prejudice from the docket of this Court.

Date: 7/31/19

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

MARK JEFFERIS,
   Plaintiff,

vs.

HALLRICH INCORPORATED, et al.,
   Defendants.

Case No. 1:18-cv-687
Dlott, J.
Litkovitz, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).